**FILED**

**NOVEMBER 7, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**07 C 6320**

**JUDGE DARRAH
MAGISTRATE JUDGE VALDEZ**

**LI**

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, <br>   a Delaware Limited Liability Company, <br> DD IP HOLDER LLC, <br>   a Delaware Limited Liability Company, <br> BASKIN-ROBBINS FRANCHISED SHOPS LLC, <br>   a Delaware Limited Liability Company, and <br> BR IP HOLDER LLC, <br>   a Delaware Limited Liability Company, <br><br>     Plaintiffs, <br><br>     v. <br><br> TEJANY & TEJANY, INC., <br>   an Illinois Corporation, <br> SARDINIA, INC., <br>   an Illinois Corporation, <br> NAVEED & FARIDA, INC., <br>   an Illinois Corporation, <br> KHURSHID & ZULFIQUAR, INC., <br>   an Illinois Corporation, <br> NAVROZ, INC., <br>   an Illinois Corporation, <br> NAVEED & NALEENA, INC., <br>   an Illinois Corporation, <br> AL-KARIM, INC., <br>   an Illinois Corporation, <br> AL-FATIMA, INC., <br>   an Illinois Corporation, <br> SANKAR RAHIM, INC., <br>   an Illinois Corporation, <br> SHAKER KHANOO, INC., <br>   an Illinois Corporation, <br> FATIMA & FARIDA, INC., <br>   an Illinois Corporation, <br> SUNROSE, INC., <br>   an Illinois Corporation, <br> ROYAL CROWN, INC., <br>   an Illinois Corporation, <br> INARA, INC., <br>   an Illinois Corporation, | C.A. No. _____ |

SABEEN, INC.,                                    )
    an Illinois Corporation,                     )
NAVEED & SUNENA, INC.,                           )
    an Illinois Corporation,                     )
NOORUDDIN SADRUDDIN,                             )
    an Illinois Resident,                        )
PYARALI KHOJA,                                   )
    an Illinois Resident,                        )
NOORALI ALI,                                     )
    an Illinois Resident,                        )
MANU PATEL,                                      )
    an Illinois Resident, and                    )
JAFFAR A. KHOWAJA,                               )
    an Illinois Resident,                        )
                                                 )
                   Defendants.            )
                                                 )

## COMPLAINT

This is an action for breach of contract and trademark infringement by sister-company franchisors Dunkin' Donuts and Baskin-Robbins (collectively, "Plaintiffs") with respect to eighteen (18) Dunkin' Donuts and Baskin-Robbins shops in the Chicago metropolitan area.

Defendants have breached a Settlement Agreement between the parties by failing to fulfill their obligations under the Agreement to close on the transfer of Defendants' shops to third party purchasers. Defendants have engaged in a pattern of obstruction and delay, and have generally failed to cooperate in the sale of the shops. Pursuant to the Settlement Agreement, Defendants specifically agreed that in the event that they breached their obligations under the purchase contracts that Plaintiffs are entitled to specific performance of their obligation to transfer the shops to Plaintiffs. Recently, Plaintiffs sent Defendants a notice informing them that they were in breach of the Settlement Agreement, that they were no longer entitled to use Plaintiffs' trademarks, trade names, and trade dress, and demanding that they immediately transfer the shops to Plaintiffs. Defendants' continued use and enjoyment of Plaintiffs'

trademarks, trade names, and trade dress is a violation of the Lanham Act, 15 U.S.C. §§ 1114 *et. seq.* Plaintiffs seek monetary, injunctive, and other relief against Defendants for the reasons set forth below.

**THE PARTIES**

1.      Plaintiff Dunkin' Donuts Franchised Restaurants LLC ("Dunkin'" or "Dunkin' Donuts"), successor-in-interest to Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. All Dunkin' Donuts Franchise Agreements dated prior to May 26, 2006 have been assigned to Dunkin' Donuts Franchised Restaurants LLC. Dunkin' Donuts is engaged in the business of franchising independent business persons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts System, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.      Plaintiff DD IP Holder LLC, Dunkin's wholly owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

3.      Plaintiff Baskin-Robbins Franchised Shops LLC, successor-in-interest to Baskin-

3

Robbins USA, Co., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. All Baskin-Robbins Franchise Agreements dated prior to May 26, 2006 have been assigned to Baskin-Robbins Franchised Shops LLC. Baskin-Robbins is engaged in the business of franchising independent business persons to operate Baskin-Robbins stores throughout the United States. Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

4.      Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. Plaintiff BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks. Baskin-Robbins has the exclusive license to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores. Unless otherwise specified, Baskin-Robbins Franchised Shops LLC and BR IP Holder LLC are collectively referred hereinafter as "Baskin" or "Baskin-Robbins."

5.      Dunkin' and Baskin-Robbins operate as separate corporations. However, they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" shops.

6.      Defendant Tejany & Tejany, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at

2543 W. Algonquin Road, Algonquin, IL 60102 (the "Algonquin Shop") pursuant to a Franchise Agreement dated May 28, 2002.

7.     Defendant Sardinia, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at retail doughnut shops located at 150 E. Ogden Avenue, Hinsdale, IL 60521 (the "Hinsdale Shop") pursuant to a Franchise Agreement dated August 13, 1990 and at 1200 75th Street, Downers Grove, IL 60516 (the "Downers Grove Shop") pursuant to a Franchise Agreement dated May 28, 2002.

8.     Defendant Naveed & Farida, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at retail doughnut shops and ice cream stores located at 263 S. Randall Road, Elgin, IL 60123 (the "Elgin Shop") pursuant to a Franchise Agreement dated January 12, 2000 and at 1770 S. Randall Road, Geneva, IL 60134 (the "Geneva Shop") pursuant to another Franchise Agreement also dated January 12, 2000.

9.     Defendant Khurshid & Zulfiquar, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at 22W 251 North Avenue, Glen Ellyn, IL 60137 (the "Glen Ellyn Shop") pursuant to a Franchise Agreement dated June 24, 2003.

10.     Defendant Navroz, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at 1511 Irving Park Road, Hanover Park, IL 60133 (the "Irving Park Road Shop") pursuant to a Franchise Agreement dated July 31, 1995.

11.     Defendant Naveed & Naleena, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail

doughnut shop and ice cream store located at 7448 Barrington Road, Hanover Park, IL 60133 (the "Barrington Road Shop") pursuant to Franchise Agreement dated May 5, 2004.

12.    Defendant Al-Karim, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 9400 Joliet Road, Hodgkins, IL 60525 (the "Hodgkins Shop") pursuant to Franchise Agreement dated May 28, 2002.

13.    Defendant Al-Fatima, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin-Robbins franchisee at a retail doughnut shop and ice cream store located at 407 S. Lincolnway, North Aurora, IL 60542 (the "North Aurora Shop") pursuant to Franchise Agreement dated August 2, 2002.

14.    Defendant Sankar Rahim, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 1711 W. Main Street, St. Charles, IL 60174 (the "St. Charles Shop") pursuant to Franchise Agreement dated July 23, 2002.

15.    Defendant Shaker Khanoo, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 3019 Wolf Road, Westchester, IL 60154 (the "Westchester Shop") pursuant to Franchise Agreement dated July 30, 2003.

16.    Defendant Fatima & Farida, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 15 E. Ogden Avenue, Westmont, IL 60559 (the "Westmont Shop") pursuant to Franchise Agreement dated March 9, 2004.

17.    Defendant Sunrose, Inc. is an Illinois corporation with its principal place of business in Illinois.  Defendant was a Dunkin' franchisee at a retail doughnut shop located at 15 Danada Square E., Wheaton, IL 60187 (the "Wheaton Shop") pursuant to a Franchise Agreement dated May 22, 2001.

18.    Defendant Royal Crown, Inc. is an Illinois corporation with its principal place of business in Illinois.  Defendant was a Dunkin' franchisee at a retail doughnut shop located at 7247 Kingery Highway, Willowbrook, IL 60527 (the "Willowbrook Shop") pursuant to Franchise Agreement dated July 27, 2000.

19.    Defendant Inara, Inc. is an Illinois corporation with its principal place of business in Illinois.  Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 516 W. Irving Park Road, Wood Dale, IL 60191 (the "Wood Dale Shop") pursuant to Franchise Agreement dated February 8, 2004.

20.    Defendant Sabeen, Inc. is an Illinois corporation with its principal place of business in Illinois.  Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 335 S. Eastwood Drive, Woodstock, IL 60098 (the "Woodstock Shop") pursuant to Franchise Agreement dated May 27, 2005.

21.    Defendant Naveed & Sunena, Inc. is an Illinois corporation with its principal place of business in Illinois.  Defendant was a Dunkin' franchisee at a retail doughnut shop located at 890 E. Main Street, East Dundee, IL 60118 (the "East Dundee Shop") pursuant to Franchise Agreement dated December 7, 1995.

22.    Defendant Nooruddin Sadruddin is a natural person and a citizen and resident of the State of Illinois.  At all times relevant to this action, Defendant was an officer and shareholder of all of the corporate Defendants identified above.  Defendant Nooruddin Sadruddin

personally guaranteed the obligations of the foregoing corporations pursuant to executed personal guarantees.

23.    Defendant Pyarali Khoja is a natural person and a citizen and resident of the State of Illinois.  At all times relevant to this action, Defendant was an officer and shareholder of corporate Defendant Khurshid & Zulfiquar, Inc.  Defendant Pyarali Khoja personally guaranteed the obligations of the foregoing corporation pursuant to an executed personal guarantee.

24.    Defendant Noorali Ali is a natural person and a citizen and resident of the State of Illinois.  At all times relevant to this action, Defendant was an officer and shareholder of corporate Defendant Naveed & Naleena, Inc.  Defendant Noorali Ali personally guaranteed the obligations of the foregoing corporation pursuant to an executed personal guarantee.

25.    Defendant Manu Patel is a natural person and a citizen and resident of the State of Illinois.  At all times relevant to this action, Defendant was an officer and shareholder of corporate Defendant Sankar Rahim, Inc.  Defendant Manu Patel personally guaranteed the obligations of the foregoing corporation pursuant to an executed personal guarantee.

26.    Defendant Jaffar A. Khowaja is a natural person and a citizen and resident of the State of Illinois.  At all times relevant to this action, Defendant was an officer and shareholder of corporate Defendant Naveed & Sunena, Inc.  Defendant Jaffar A. Khowaja personally guaranteed the obligations of the foregoing corporation pursuant to an executed personal guarantee.

## JURISDICTION AND VENUE

27.    This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a).  The amount in controversy exceeds $75,000, exclusive of costs and interest.

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Defendants reside in and/or conduct business in this District.  A substantial part of the events giving rise to this action occurred in this District, and the majority of the subject property is located herein.

29.     This Court has *in personam* jurisdiction over Defendants because they are residents and/or citizens of this District, they conduct business in this District, and/or a substantial part of the events giving rise to these claims occurred in this District.

## BACKGROUND

### The Dunkin' Donuts System

30.     Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

31.     DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

32.     DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' Donuts, and related marks.  Each of these registrations is in full force and effect, and is incontestable, pursuant to 15 U.S.C. § 1065.

33.     The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

34.     The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

35.     The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years.  Dunkin' Donuts and its franchisees have expended

approximately $1,500,000,000 in advertising and promoting the Dunkin' Donuts marks over the last thirty-five years. Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion.

36.     Dunkin' Donuts and its franchisees currently operate approximately 5,600 shops in the United States and 2,000 shops outside of the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than forty-five years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

37.     As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

### The Baskin-Robbins System

38.     Baskin-Robbins is the franchisor of the Baskin-Robbins System.

39.     BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

40.     BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full

force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

41.    The Baskin-Robbins trademarks are utilized in interstate commerce.

42.    The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

43.    Baskin-Robbins and its franchisees currently operate approximately 2,500 stores in the United States and 3,000 stores outside of the United States. In the more than fifty-five years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

44.    As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

### The Parties' Rights and Obligations Under the
### Settlement Agreement and Purchase Option Agreements

45.    On August 15, 2005, Plaintiffs' predecessors-in-interest filed a lawsuit against Defendants in the United States District Court for the Northern District of Illinois based on Defendants' breaches of their Franchise Agreements. *Dunkin' Donuts Incorporated v. Tejany & Tejany, Inc., et al.*, C.A. No. 05-C-4770. Plaintiffs alleged that Defendants breached various provisions of the Franchise Agreements requiring them to comply with the law in the operation of their franchised businesses, warranting termination of the Agreements. Specifically, Plaintiffs

alleged that Defendants had failed to pay overtime wages to numerous employees in compliance with the Fair Labor Standards Act ("FLSA").

46.     At approximately the same time that the lawsuit was pending, the United States Department of Labor conducted an investigation into Defendants' employment practices and determined that Defendants had failed to pay overtime wages as required by the FLSA.

47.     Defendants ultimately settled their dispute with the Department of Labor by agreeing to pay $750,000 in back overtime wages to over 300 current and former employees.

48.     In May 2007, Plaintiffs and Defendants settled their lawsuit.  The parties entered into a Settlement Agreement dated May 9, 2007 reflecting the terms of settlement.  On May 31, 2007, the parties dismissed the lawsuit without prejudice.

49.     Pursuant to Paragraph 1 of the Settlement Agreement, the parties entered into 17 Purchase Option Agreements ("POAs"), one for each of Defendants' shops to be sold.  Pursuant to the POAs, Defendants granted Plaintiffs or their designees the option to purchase the shops at the price designated in each POA.  Plaintiffs had until November 5, 2007 to exercise their option under the POAs.

50.     Plaintiffs timely exercised their option to purchase 15 of the shops and have found purchasers to assign their rights to in each of those POAs.

51.     Pursuant to the POAs, Defendants had certain routine obligations in order to facilitate the prompt sale of the shops, including but not limited to, entering into Plaintiffs' customary agreements to provide for the assignment of Defendants' rights to the purchasers, complying with all provisions of the law pertaining to bulk transfers, providing to the purchaser all governmental licenses and permits required to lawfully operate the shops, executing and delivering to the purchasers a bill of sale warranting that there are no encumbrances on the

property to be transferred, and executing and delivering to the purchasers a Letter of

Representation (which is attached to the POAs), in which Defendants make certain warranties

and representations regarding the status of the assets to be sold.

52.    Pursuant to Paragraph 5 of the Settlement Agreement, the closing date for the

transfer of the shops is to be determined by Plaintiffs.

53.    The real estate for the North Aurora Shop is owned by Defendant Nooruddin

Sadruddin's wife.  Pursuant to Paragraph 3 of the Settlement Agreement, Defendants were

required to provide Plaintiffs a lease for the North Aurora Shop on the following terms: a five

year term with two five year options, $10,000 a month in base rent, and a 3% increase in base

rent every five years.

54.    Pursuant to Paragraph 4 of the Settlement Agreement, Defendants agreed to

transfer the shops "free and clear of all liens and encumbrances."

55.    The parties specifically negotiated the remedy in the event that Defendants

breached their obligation to transfer the shops pursuant to the POAs.  Pursuant to Paragraph 12

of the Settlement Agreement:

> In the event that defendants breach their obligation to transfer the shops
> pursuant to the Purchase Option Agreements, and Dunkin' elects to file suit under
> this Agreement, then all parties acknowledge that Dunkin', if successful, is
> entitled to specific performance of those obligations and that defendants shall not
> contend that the breach is compensable in monetary damages.  Defendants also
> agree to indemnify Dunkin' for all legal costs, including attorneys' fees, incurred
> in enforcing this provision.
>
> Further, if defendants contest the purchase price obtained by Dunkin' for
> the shops, or if defendants allege that Dunkin' breached this Agreement in any
> other way, the obligations of defendants to pay monies under this Agreement and
> to transfer or convey the shops are not extinguished and defendants' exclusive
> remedy for Dunkin's alleged breach is a claim for monetary damages.  In no event
> shall defendants be entitled to remain in any franchise relationship or use the
> Dunkin' or Baskin-Robbins trademarks, trade names, or trade dress beyond the
> date proposed for closing by Dunkin'.

56.    Thus, Defendants agreed that in the event that they breached the POAs they would immediately transfer the shops to Plaintiffs.

**Defendants' Breaches of the Settlement Agreement and the POAs**

57.    Defendants have knowingly, purposefully, and repeatedly breached the terms of the Settlement Agreement and POAs by, among other things:

- Failing to close on the sale of several of the shops on the established closing dates;

- Incurring over ten million dollars in liens on the businesses despite Defendants' obligation to transfer the businesses free of all liens and encumbrances;

- Failing to provide leases for several shops despite the fact that Plaintiffs have asked for the leases for months;

- Unreasonably delaying providing landlord contact information necessary to obtain the landlord's consent to the assignment of the leases at issue;

- Failing to provide tax identification information so that Plaintiffs could conduct up to date lien searches;

- Failing to provide Bulk Sales Stop Orders from the Illinois Department of Revenue;

- Unreasonably delaying providing corporate tax returns to the prospective purchasers; and

- Failing to provide Letters of Representation as required by the POAs.

58.    Defendants have delayed on multiple occasions closing on the sale of several of the franchised businesses. Specifically, the sale of the Irving Park Road, Barrington Road, and Glen Ellyn Shops had been scheduled for October 10, 2007, the sale of the Willowbrook Shop had been scheduled for October 15, 2007, the sale of the Hinsdale and Hodgkins Shops had been scheduled for October 25, 2007, the sale of the St. Charles Shop had been scheduled for October

28, 2007, and the sale of the Wood Dale Shop had been scheduled for November 1, 2007. In each instance, Defendants refused to close on the sale of the shops on the established date.

59.    Despite the obligation to transfer the franchised businesses free and clear of all liens and encumbrances, Defendants Sunrose, Inc., Al-Fatima, Inc., Fatima & Farida, Inc., Sardinia, Inc., Sabeen, Inc., and Shaker Khanoo, Inc. have over ten million dollars in liens against them. Upon information and belief, these liens relate to loans for Defendant Sadruddin's hotel business. Unbeknownst to Plaintiffs, the liens were placed on the businesses at approximately the same time Defendants were negotiating the terms of the Settlement Agreement.

60.    Defendants have repeatedly failed to provide a lease for the North Aurora Shop that conforms to the required terms under the Settlement Agreement, as referenced in Paragraph 53 above. After almost two months of asking, on August 27, 2007, Defendants ultimately produced to Plaintiffs a lease that included percentage rent that was not called for in the Settlement Agreement. When Plaintiffs raised this issue, Defendants ultimately revised the lease by deleting the percentage rent terms but including base rent increases that were not called for in the Settlement Agreement. That deficient lease was not provided to Plaintiffs until October 29, 2007. To date, Defendants have refused to produce a lease for the North Aurora Shop in compliance with the Settlement Agreement.

61.    Similarly, on July 12, 2007, Plaintiffs asked for a copy of the lease for the Westmont Shop. Plaintiffs have never received that lease and therefore are unable to close on that location.

62.    Defendants have unreasonably delayed providing landlord contact information. Before the shops can be transferred, the landlords must approve the assignment of the leases to

15

the purchasers. Plaintiffs first asked for this basic information on July 12, 2007. After numerous follow up requests, on August 27, 2007, Defendants produced a list of landlord names without telephone numbers or contact information. It was not until October 29, 2007 before Defendants provided any of the requested information.

63.    When Plaintiffs asked for tax identification numbers for Defendants Sabeen, Inc., Fatima & Farida, Inc., and Shaker Khanoo, Inc. in order to conduct up to date lien searches, Defendants' response was that they do not have such information.

64.    Bulk Sales Stop Orders notify a prospective purchaser of any outstanding taxes owed or lien rights the state may have against the asset being sold. Defendants have failed to provide proof that they have procured Bulk Sales Stop Orders from the Illinois Department of Revenue, which is a prerequisite to closing, for all shops other than Geneva and Elgin.

65.    Defendants delayed for over a month in providing corporate tax returns to the prospective purchasers so that they could evaluate the finances of the businesses prior to purchasing.

66.    Defendants have failed to provide Letters of Representation pursuant to the POAs.

67.    Defendants have delayed closing based on the alleged vacation of their banker. Presumably, no one else at the bank was capable of attending the closing.

68.    Until last week, Defendants Royal Crown, Inc. and Khurshid & Zulfiquar, Inc. had been dissolved as corporations for several years. Accordingly, their status prevented closing on the sale of their shops.

69.    Defendants' postponements of the closings has also had a significant impact on the purchasers of the shops, who have hired employees and closed on loans for the purchase of

the businesses in anticipation of established closing dates.  Upon information and belief, Defendants' postponements have cost the purchasers thousands of dollars a week in labor costs.

70.     On November 7, 2007, Plaintiffs sent Defendants a notice informing them that they were in breach of the Settlement Agreement, that they were no longer entitled to use Plaintiffs' trademarks, trade names, and trade dress, and demanding that they immediately transfer the shops to Plaintiffs.

71.     Defendants' breaches of the Settlement Agreement and POAs have caused and continue to cause irreparable harm to Plaintiffs for which no adequate remedy at law exists.

## COUNT I
### Breach of Contract

72.     The allegations of Paragraphs 1 through 71 are hereby incorporated by reference.

73.     The conduct described in this Complaint constitutes material breaches of the contractual provisions of the Settlement Agreement and POAs.

74.     As a direct and proximate result of these breaches, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred substantial losses, fees, and expenses.

## COUNT II
### Trademark Infringement

75.     The allegations of paragraphs 1 through 74 are hereby incorporated by reference.

76.     Defendants' use of Plaintiffs' trademarks and trade names outside the scope of the Franchise Agreements and without Plaintiffs' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Plaintiffs.  Such continued use of Plaintiffs' trademarks and trade name infringes their exclusive rights in the trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114.

77.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

78.     As a direct and proximate result of these actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT III
## Unfair Competition

79.     The allegations of paragraphs 1 through 78 are hereby incorporated by reference.

80.     Defendants' use of Plaintiffs' trademarks, trade name, and trade dress outside the scope of their Franchise Agreements is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities.  Such continued unauthorized use of Plaintiffs' trademarks and trade names violate § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

81.     Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

82.     As a direct and proximate result of these actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## COUNT IV
## Trade Dress Infringement

83.     The allegations of paragraphs 1 through 82 are hereby incorporated by reference.

84.     Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" and "Baskin-Robbins" appear

in the same lettering style and in the same distinctive color schemes as Plaintiffs use for the doughnut shops and ice cream stores operated by Plaintiffs' licensees.

85.    Defendants' use of the trade dress that is identical or confusingly similar to Plaintiffs' trade dress constitutes a false designation of the origin of the Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of the Defendants' shops with the shops operated by Plaintiffs' licensees.  Such adoption of Plaintiffs' trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

86.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

87.    As a direct and proximate result of these actions, Plaintiffs have suffered and are continuing to suffer irreparable injury and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter a declaratory judgment order stating that Defendants' conduct violated the terms of the Settlement Agreement and the POAs;

B.    Enter judgment in favor of Plaintiffs for the damages suffered as a result of Defendants' breaches of the Settlement Agreement and POAs;

C.    Enter an order enjoining Defendants to specifically perform their obligations under the Settlement Agreement and POAs, including but not limited to, immediately transferring possession of the shops to Plaintiffs or their designees;

D.    Award Plaintiffs judgment against Defendants for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement, trade dress infringement, and unfair competition, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

E.    Enter an order enjoining Defendants, and all those acting in concert with them, by preliminary and permanent injunction, from using the Plaintiffs' trademarks, trade names, and trade dress, and from otherwise engaging in unfair competition with Plaintiffs;

F.    Enter an order directing Defendants to comply with all of their post-termination obligations as provided in the Settlement Agreement, POAs, Franchise Agreements and leases, including any lease riders and lease option agreements;

G.    Award Plaintiffs prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

H.    Award Plaintiffs such exemplary or punitive damages as are deemed appropriate in light of the willful, intentional, and malicious nature of Defendants' conduct;

I.    Award Plaintiffs their costs and attorneys' fees incurred in connection with this action, pursuant to contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

J.    Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Roger H. Stetson
W. Scott Porterfield
Roger H. Stetson
BARACK FERRAZZANO KIRSCHBAUM
   & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Telephone:   (312) 984-3100
Facsimile:   (312) 984-3150

*Attorneys for Plaintiffs*
Dunkin' Donuts Franchised Restaurants LLC,
DD IP Holder LLC,
Baskin-Robbins Franchised Shops LLC, and
BR IP Holder LLC

Robert L. Zisk
David E. Worthen
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:   (202) 295-2200
Facsimile:   (202) 295-2250

Of Counsel

Dated: November 7, 2007