# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, *et al.*, | ) ) ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | )    C.A. No. 07cv6320 |
|  | ) |
| TEJANY & TEJANY, INC., *et al.*, | )    Judge John W. Darrah |
|  | ) |
| Defendants. | ) |

## CERTIFICATION OF KATHRYN THOMAS

1.      My name is Kathryn Thomas. I am a citizen and resident of the Commonwealth

of Massachusetts, and I make this Certification based on personal knowledge and in support of

Plaintiffs' Memorandum in Support of Their Motion for a Preliminary Injunction.

2.      I am a Director and Legal Counsel for Dunkin' Donuts Franchised Restaurants

LLC ("Dunkin' or Dunkin' Donuts") and Baskin-Robbins Franchised Shops LLC ("Baskin-

Robbins"). As Director and Legal Counsel, I am the custodian of and have access to executed

copies of all Dunkin' and Baskin-Robbins franchise agreements, leases, correspondence, and

other related documents and records concerning each Dunkin' Donuts and Baskin-Robbins

franchise. This includes the documents and records relating to the Dunkin' Donuts and Baskin-

Robbins franchises owned by Defendants in this case, as well as the Settlement Agreement

between the parties. The documents attached hereto are kept in the course of Dunkin' and

Baskin-Robbins' regularly conducted business activities, and it is Dunkin' and Baskin-Robbins'

normal practice to make and keep these documents. I am familiar with the business of Dunkin'

and Baskin-Robbins generally, including having knowledge regarding the resources Dunkin' and Baskin-Robbins have dedicated toward its intellectual property and the relationship between franchisees' operations and the goodwill associated with Dunkin' and Baskin-Robbins' marks.

3.    Dunkin' is engaged in the business of franchising independent business persons to operate Dunkin' shops throughout the United States. Dunkin' franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

4.    Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

5.    DD IP Holder LLC, is the owner of the trademark, service mark, and trade name "Dunkin' Donuts" and related marks. Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

6.    DD IP Holder LLC owns numerous federal registrations for the mark "Dunkin' Donuts," and related marks. Each of these registrations is in full force and effect, and is incontestable, pursuant to 15 U.S.C. § 1065.

7.    The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Dunkin' Donuts and its franchisees have expended approximately $1,500,000,000 in advertising and promoting the Dunkin' Donuts marks over the last thirty-five years. Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005

alone on advertising and promotion. *See* Exhibit A (attached hereto).

8.      Dunkin' Donuts and its franchisees currently operate approximately 5,600 shops in the United States and 2,000 shops outside of the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than forty-five years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

9.      As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

10.     Baskin-Robbins is engaged in the business of franchising independent business persons to operate Baskin-Robbins stores throughout the United States. Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

11.     Baskin-Robbins is the franchisor of the Baskin-Robbins franchise system.

12.     BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins Incorporated has the exclusive license to use and license others to use these marks and trade names and has used them continuously since

3

approximately 1950 to identify its ice cream stores, and the ice cream and other products associated with those stores.

13.     BR IP Holder LLC owns numerous federal registrations for the mark Baskin-Robbins and related marks.

14.     The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. Baskin-Robbins has expended tens of millions of dollars in advertising and promoting the Baskin-Robbins marks over the last fifty years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

15.     Baskin-Robbins and its franchisees currently operate approximately 2,500 stores in the United States and 3,000 stores outside of the United States. In the more than fifty-five years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

16.     As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

17.     Dunkin' and Baskin-Robbins operate as separate companies. However, they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" shops.

18.     Defendant Tejany & Tejany, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at

4

2543 W. Algonquin Road, Algonquin, IL 60102 (the "Algonquin Shop") pursuant to a Franchise Agreement dated May 28, 2002.

19.     Defendant Sardinia, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at retail doughnut shops located at 150 E. Ogden Avenue, Hinsdale, IL 60521 (the "Hinsdale Shop") pursuant to a Franchise Agreement dated August 13, 1990 and at 1200 75th Street, Downers Grove, IL 60516 (the "Downers Grove Shop") pursuant to a Franchise Agreement dated May 28, 2002.

20.     Defendant Naveed & Farida, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at retail doughnut shops and ice cream stores located at 263 S. Randall Road, Elgin, IL 60123 (the "Elgin Shop") pursuant to a Franchise Agreement dated January 12, 2000 and at 1770 S. Randall Road, Geneva, IL 60134 (the "Geneva Shop") pursuant to another Franchise Agreement also dated January 12, 2000.

21.     Defendant Khurshid & Zulfiquar, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at 22W 251 North Avenue, Glen Ellyn, IL 60137 (the "Glen Ellyn Shop") pursuant to a Franchise Agreement dated June 24, 2003.

22.     Defendant Navroz, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at 1511 Irving Park Road, Hanover Park, IL 60133 (the "Irving Park Road Shop") pursuant to a Franchise Agreement dated July 31, 1995.

23.     Defendant Naveed & Naleena, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail

5

doughnut shop and ice cream store located at 7448 Barrington Road, Hanover Park, IL 60133 (the "Barrington Road Shop") pursuant to Franchise Agreement dated May 5, 2004.

24. Defendant Al-Karim, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 9400 Joliet Road, Hodgkins, IL 60525 (the "Hodgkins Shop") pursuant to Franchise Agreement dated May 28, 2002.

25. Defendant Al-Fatima, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin-Robbins franchisee at a retail doughnut shop and ice cream store located at 407 S. Lincolnway, North Aurora, IL 60542 (the "North Aurora Shop") pursuant to Franchise Agreement dated August 2, 2002.

26. Defendant Sankar Rahim, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 1711 W. Main Street, St. Charles, IL 60174 (the "St. Charles Shop") pursuant to Franchise Agreement dated July 23, 2002.

27. Defendant Shaker Khanoo, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 3019 Wolf Road, Westchester, IL 60154 (the "Westchester Shop") pursuant to Franchise Agreement dated July 30, 2003.

28. Defendant Fatima & Farida, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 15 E. Ogden Avenue, Westmont, IL 60559 (the "Westmont Shop") pursuant to Franchise Agreement dated March 9, 2004.

6

29.    Defendant Sunrose, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at 15 Danada Square E., Wheaton, IL 60187 (the "Wheaton Shop") pursuant to a Franchise Agreement dated May 22, 2001.

30.    Defendant Royal Crown, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at 7247 Kingery Highway, Willowbrook, IL 60527 (the "Willowbrook Shop") pursuant to Franchise Agreement dated July 27, 2000.

31.    Defendant Inara, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 516 W. Irving Park Road, Wood Dale, IL 60191 (the "Wood Dale Shop") pursuant to Franchise Agreement dated February 8, 2004.

32.    Defendant Sabeen, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' and Baskin franchisee at a retail doughnut shop and ice cream store located at 335 S. Eastwood Drive, Woodstock, IL 60098 (the "Woodstock Shop") pursuant to Franchise Agreement dated May 27, 2005.

33.    Defendant Naveed & Sunena, Inc. is an Illinois corporation with its principal place of business in Illinois. Defendant was a Dunkin' franchisee at a retail doughnut shop located at 890 E. Main Street, East Dundee, IL 60118 (the "East Dundee Shop") pursuant to Franchise Agreement dated December 7, 1995.

34.    Defendant Nooruddin Sadruddin is a natural person and a citizen and resident of the State of Illinois. At all times relevant to this action, Defendant was an officer and shareholder of all of the corporate Defendants identified above. Defendant Nooruddin Sadruddin

7

personally guaranteed the obligations of the foregoing corporations pursuant to executed personal guarantees.

35.    Defendant Pyarali Khoja is a natural person and a citizen and resident of the State of Illinois. At all times relevant to this action, Defendant was an officer and shareholder of corporate Defendant Khurshid & Zulfiquar, Inc. Defendant Pyarali Khoja personally guaranteed the obligations of the foregoing corporation pursuant to an executed personal guarantee.

36.    Defendant Noorali Ali is a natural person and a citizen and resident of the State of Illinois. At all times relevant to this action, Defendant was an officer and shareholder of corporate Defendant Naveed & Naleena, Inc. Defendant Noorali Ali personally guaranteed the obligations of the foregoing corporation pursuant to an executed personal guarantee.

37.    Defendant Manu Patel is a natural person and a citizen and resident of the State of Illinois. At all times relevant to this action, Defendant was an officer and shareholder of corporate Defendant Sankar Rahim, Inc. Defendant Manu Patel personally guaranteed the obligations of the foregoing corporation pursuant to an executed personal guarantee.

38.    Defendant Jaffar A. Khowaja is a natural person and a citizen and resident of the State of Illinois. At all times relevant to this action, Defendant was an officer and shareholder of corporate Defendant Naveed & Sunena, Inc. Defendant Jaffar A. Khowaja personally guaranteed the obligations of the foregoing corporation pursuant to an executed personal guarantee.

39.    On August 15, 2005, Plaintiffs' predecessors-in-interest filed a lawsuit against Defendants in the United States District Court for the Northern District of Illinois based on Defendants' breaches of their Franchise Agreements. *Dunkin' Donuts Incorporated v. Tejany & Tejany, Inc., et al.*, C.A. No. 05-C-4770. Plaintiffs alleged that Defendants breached various

8

provisions of the Franchise Agreements requiring them to comply with the law in the operation of their franchised businesses, warranting termination of the Agreements. Specifically, Plaintiffs alleged that Defendants had failed to pay overtime wages to numerous employees in compliance with the Fair Labor Standards Act ("FLSA").

40.     At approximately the same time that the lawsuit was pending, the United States Department of Labor conducted an investigation into Defendants' employment practices and determined that Defendants had failed to pay overtime wages as required by the FLSA.

41.     Defendants ultimately settled their dispute with the Department of Labor by agreeing to pay $750,000 in back overtime wages to over 300 current and former employees.

42.     In May 2007, Plaintiffs and Defendants settled their lawsuit. The parties entered into a Settlement Agreement dated May 9, 2007 reflecting the terms of settlement. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit B.

43.     Pursuant to Paragraph 1 of the Settlement Agreement, the parties entered into 17 Purchase Option Agreements ("POAs"), one for each of Defendants' shops to be sold. A true and correct copy of the POA for the Wood Dale Shop is attached hereto as Exhibit C. Except for the identification of the Defendant, the address of the shop, and the purchase price, the terms of the POAs are identical or virtually identical. Accordingly, in an effort to reduce the volume of exhibits, attached hereto is a true and correct copy of the first page of the remaining 16 POAs. If the Court should require the complete version of the POAs, Plaintiffs will submit them upon request.

44.     On November 7, 2007, Plaintiffs sent Defendants a notice informing them that they were in breach of the Settlement Agreement, that they were no longer entitled to use Plaintiffs' trademarks, trade names, and trade dress, and demanding that they immediately

9

transfer the shops to Plaintiffs. A true and correct copy of the Notice of Breach of Settlement

Agreement is attached hereto as Exhibit D.

I certify under penalty of perjury that the foregoing is true and correct. Executed on this

8th day of November, 2007.

Kathryn Thomas

# EXHIBIT A

## DUNKIN' DONUTS ADVERTISING EXPENDITURES

Source:  Audits of Franchise Owners' Advertising and Sales Promotion Fund (since 1971)

| Year | Direct Fund (Franchisees) | National Ad Fund |
|---|---|---|
| 1971-1989 FY Nov. 1-Oct. 31 | | |
| 1971 | $       913,605. | - |
| 1972 | $   1,239,600. | - |
| 1973 | $   1,537,500. | - |
| 1974 | $   1,555,500. | - |
| 1975 | $   1,913,900. | - |
| 1976 | $   2,318,000. | - |
| 1977 | $   3,148,200. | - |
| 1978 | $   2,979,500. | $   1,283,800. |
| 1979 | $   3,852,300. | $   2,930,900. |
| 1980 | $   4,100,300. | $   2,173,500. |
| 1981 | $   5,246,200. | $   3,680,300. |
| 1982 | $   6,671,800. | $   8,112,800. |
| 1983 | $   9,985,400. | $   9,190,400. |
| 1984 | $ 11,313,800. | $   7,806,000. |
| 1985 | $ 13,924,500. | $   7,010,600. |
| 1986 | $ 19,137,200. | $   5,392,300. |
| 1987 | $ 23,457,900. | $   3,375,400. |
| 1988 | $ 26,694,400. | $   3,656,700. |
| 1989 | $ 24,731,200. | $   6,005,700. |
| 1990 – 16 mos. (Oct. 28, 1989 – Feb. 23, 1991) | $ 34,671,100. | $   8,990,900. |
| 1991 (Feb. 24, 1991 – Feb. 29, 1992) | $ 28,007,700. | $   6,988,100. |
| 1993 | $ 34,447,200. | $ 10,203,000. |
| 1994 | $ 39,091,900. | $   6,730,800. |
| 1995 – 18 mos. (Feb. 27, 1994 – Aug. 26, 1995) | $ 70,249,600. | $ 16,450,200. |
| 1996 | $ 48,781,865. | $   7,114,017. |
| 1997 | $ 60,623,402. | $ 13,600,318. |
| 1998 | $ 67,519,361. | $ 14,764,528. |
| 1999 | $ 72,019,035. | $ 13,981,813. |
| 2000 | $ 78,315,903. | $ 15,221,716. |
| 2001 | $ 81,200,623. | $ 20,819,820. |
| 2002 | $ 83,492,604. | $ 26,173,990. |
| 2003 | $ 85,960,809. | $ 36,271,159. |
| 2004 | $ 93,240,027. | $ 45,871,200. |
| 2005 | $ 128,359,916. | $ 38,687,855. |
| TOTAL: | $ 1,170,701,850. | $ 343,045,749. |

GP:2238800 v1

# EXHIBIT B



2600 VIRGINIA AVENUE, N.W.
SUITE 1111 – THE WATERGATE
WASHINGTON, DC 20037-1931
MAIN: 202.295.2200
FAX: 202.295.2250

DAVID E. WORTHEN
ATTORNEY
DIRECT DIAL: 202.295.2203
DIRECT FAX: 202.295.2253
DAVID.WORTHEN@GPMLAW.COM

May 9, 2007

**CONFIDENTIAL COMMUNICATION
FOR SETTLEMENT PURPOSES ONLY**

<u>**VIA EMAIL**</u>

Robert Zarco, Esq.
Zarco, Einhorn Salkowski & Brito, P.A.
Bank of America Tower
100 S.E. 2nd Street, Suite 2700
Miami, Florida 33131

Eugene Sherman
Law Office of Eugene Sherman
Three First National Plaza, Suite 3700
Chicago, Illinois 60602

Re:  *Dunkin' Donuts Incorporated, et al. v. Tejany & Tejany, Inc., et al.,*
C.A. No. 05-C-4770

Dear Robert and Gene:

I write to memorialize the agreed upon terms of the settlement between plaintiffs ("Dunkin'") and defendants.

1.    For each shop owned by defendants except PC 306710 (as explained in Paragraph 5 below), the parties will enter into Dunkin's standard form Purchase Option Agreement that will provide Dunkin' 180 days to market the shops to third party purchasers. In the interim, defendants will continue to operate the shops and must abide by all terms set forth in the Franchise Agreements and Leases. In the event that Dunkin' exercises its option, or assigns its option, to purchase the shops, Dunkin' will pay defendants $7.9 million, plus fifty percent (50%) of the total proceeds from the sale of the shops over $8.4 million, less a payment by defendants to Dunkin' of $1.75 million plus transfer fees (the "Net Purchase Price"). All proceeds between $7,900,000 and $8,400,000 shall be retained by Dunkin'. In other words, if the shops sell for a total of $9 million, defendants will net approximately $6.3 million ($7.9 million minus $1.75 million minus approximately $150,000 in transfer fees plus $300,000 [50% of the $600,000 over $8.4 million] = $6.3 million). Dunkin' will attempt to obtain the best price it can, subject to Dunkin's policies for obtaining the best qualified purchasers and for pricing units, including but not limited to, Dunkin's current approval guidelines, to assure adequate return on investment for the purchasers.

2.    Defendants have instructed Dunkin' to make all payments due to defendants under this Agreement by wire transfer to the Zarco, Einhorn, Salkowski & Brito, P.A. client trust account, and defendants hereby acknowledge and agree that any payments so made by Dunkin' shall be deemed to be made to, and received by, defendants.

NS _____
NA _____
PK _____
MP _____
JK _____

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
A FULL-SERVICE LAW FIRM
MINNEAPOLIS, MN • ST. CLOUD, MN • WASHINGTON, DC
WWW.GPMLAW.COM

Robert Zarco
Page 2
May 9, 2007

3.    The $7.9 million figure identified in Paragraph 1 herein will be apportioned on a per shop basis and, for those locations without leases (PCs 336427, 310407) will be based on the lease representations made in the Hemani purchase contract submitted to Dunkin' at the settlement conference.  In the event that defendants are unable to deliver for one or more of the shops the lease terms set forth in the Hemani purchase contract, Dunkin's valuation for that shop(s) will be subtracted from the Net Purchase Price.  Dunkin's valuation chart is attached hereto.  Nothing herein shall affect the $1.75 million payment due Dunkin' at the closing of the shops.

4.    Defendants must transfer the shops to Dunkin' or its assignee or designee free and clear of all liens and encumbrances.  Defendants represent and warrant that, at the time of closing, the secured debt for the shops will be less than the Net Purchase Price or, in the alternative, that defendants have funds available to pay the debt and will use such funds to pay off any remaining debt.

5.    The closing on the transfer of the shops will be determined by Dunkin' but will take place no earlier than August 11, 2007.  Dunkin' will provide defendants thirty (30) days advance notice of any closing.  By no later than the time of the closing of the last shop, defendants will deidentify the shop located at 1200 75th Street, Downer's Grove, Illinois (PC 306710) according to Dunkin's Deidentification Guidelines (attached hereto).

6.    For those shop locations where a defendant or an entity controlled by defendants is the landlord of the property, at the closing, the defendant or the landlord entity shall enter into Dunkin's standard landlord lease with Dunkin' or its assignee or designee.  In addition, defendants shall act diligently in obtaining all necessary lease assignments well in advance of the closing.

7.    ~~Ambreen & Meena, Inc. shall execute an assignment of lease in favor of Dunkin' or its assignee for the 470 Randall Road, S. Elgin, Illinois location.~~

8.    Upon the signing of the Purchase Option Agreements, the parties will apply to Magistrate Judge Valdez to substitute this Agreement for the Settlement Checklist/Term Sheet that was signed by the parties on April 26, 2007.

9.    Upon the signing of the Purchase Option Agreements, the parties will seek to have the above-referenced lawsuit administratively closed for 180 days.  In the event the Court will not agree to administratively close the case, the parties will file a notice of dismissal without prejudice.

NS _____
NA _____
PK _____
MP _____
JK _____

Robert Zarco
Page 3
May 9, 2007

10.    At the closing of the transfer of the shops, the parties will sign Dunkin's standard form Mutual Limited Release.

11.    If Dunkin' does not exercise its option, or assign its option, to purchase the shops, the lawsuit will be reinstated or refiled, as applicable.

12.    In the event that defendants breach their obligation to transfer the shops pursuant to the Purchase Option Agreements, and Dunkin' elects to file suit under this Agreement, then all parties acknowledge that Dunkin', if successful, is entitled to specific performance of those obligations and that defendants shall not contend that the breach is compensable in monetary damages. Defendants also agree to indemnify Dunkin' for all legal costs, including attorneys' fees, incurred in enforcing this provision.

Further, if defendants contest the purchase price obtained by Dunkin' for the shops, or if defendants allege that Dunkin' breached this Agreement in any other way, the obligations of defendants to pay monies under this Agreement and to transfer or convey the shops are not extinguished and defendants' exclusive remedy for Dunkin's alleged breach is a claim for monetary damages. In no event shall defendants be entitled to remain in any franchise relationship or use the Dunkin' or Baskin-Robbins trademarks, trade names, or trade dress beyond the date proposed for closing by Dunkin'.

13.    This Agreement may be executed in two or more counterparts, each of which shall be deemed a duplicate original, but all of which together shall constitute one and the same instrument. This Agreement shall be deemed complete, effective and enforceable only upon execution by all parties hereto.

Please have your clients signify their agreement to the settlement terms set forth above by signing in the appropriate space below.

This letter is written for settlement purposes only and nothing herein shall be admissible for any other purpose. Nothing in this letter should be interpreted as a waiver of any rights of Plaintiffs or their subsidiaries, and they expressly reserve the same.

Sincerely,

David E. Worthen

NS
NA
PK    PK
MP
JK

Robert Zarco
Page 5
May 9, 2007

ATTEST:

TEJANY & TEJANY, INC.

_____

Nooruddin Sadruddin, President

AGNEL, INC.

_____

Nooruddin Sadruddin, President

SARDINIA, INC.

_____

Nooruddin Sadruddin, President

NADEED & FARIDA, INC.

_____

Nooruddin Sadruddin, President

KHURSHID & ZULFIQUAR, INC.

_____

Nooruddin Sadruddin, President

JD

NS
NA
PK
MP
JK

Robert Zarco
Page 6
May 9, 2007

NAVROZ, INC.

_Nooruddin Sadruddin, President_

NAVEED & NALEENA, INC.

_Nooruddin Sadruddin, President_

AL-KARIM, INC.

_Nooruddin Sadruddin, President_

AL-FATIMA, INCORPORATED

_Nooruddin Sadruddin, President_

SANKAR RAHIM, INC.

_Nooruddin Sadruddin, President_

SHAKER KHANOO, INC.

_Nooruddin Sadruddin, President_

Robert Zarco
Page 7
May 9, 2007

FATIMA & FARIDA, INC.

_____
Nooruddin Sadruddin, President

SUNROSE, INC.

_____
Nooruddin Sadruddin, President

ROYAL CROWN, INC.

_____
Nooruddin Sadruddin, President

INARA, INC.

_____
Nooruddin Sadruddin, President

SABEEN, INC.

_____
Nooruddin Sadruddin, President

NAVEED & SUNENA, INC.

_____
Noorudin Sadruddin, President

AMBREEN & MEENA, INC.

_____
Noorudin Sadruddin, President

NS
NA
PK
MP
JK

Robert Zarco
Page 8
May 9, 2007

NOORUDDIN SADRUDDIN

_____

Nooruddin Sadruddin,
Individually

NISHA GHEEWALA

_____

Nisha Gheewala,
Individually

PYARALI KHOJA

_____

Pyarali Khoja
Individually

NOORALI ALI

_____

Noorali Ali,
Individually

MANU PATEL

_____

Manu Patel,
Individually

NS
NA
PK
MP
JK

Robert Zarco
Page 9
May 9, 2007

JAFFAR A. KHOWAJA

5 - 25 - 07

Jaffar A. Khowaja,
Individually

Robert Zarco
Page 9
May 9, 2007

JAFFAR A. KHOWAJA

_____

_____

Jaffar A. Khowaja,
Individually

JD _____

NJS _____
NA _____

PK _____ PK
MP _____ mgp
JK _____

May-11-07  12:27pm   From-DW                                    T-608  P 05/11  F-117

Robert Zarco
Page 4
May 9, 2007

DUNKIN' DONUTS FRANCHISED
RESTAURANTS LLC, BASKIN-
ROBBINS FRANCHISED SHOPS LLC,
TOGO'S FRANCHISED EATERIES LLC,
and DB REAL ESTATE ASSETS I
(successors in interest to Dunkin' Donuts
Incorporated, Baskin-Robbins USA, Co.,
Togo's Eateries, Inc., and Third Dunkin'
Donuts Realty, Inc., respectively)

Jack Laudermilk
Asst. Secretary

[the remainder of this page has been left blank intentionally]

| PC | Location | Remod Year | Purchase Allocation | % Allocated | W/Out Ammocco |
|---|---|---|---|---|---|
| 300211 | 3019 Wolf Rd, Westchester, IL, 60559,    SHAKER-KHANNOO, INC. | | 20,000 | 0.25% | $ 4,430 |
| 301359 | 1511 IRVING PARK RD, HANOVER PARK, IL, 60133,    NAVROZ, INC. | | 80,000 | 1.01% | $ 17,722 |
| 301854 | 1711 W Main St, Saint Charles, IL, 60174,    SANKAR RAHIM, INC. | 6 | 825,000 | 10.44% | $ 182,753 |
| 301869 | 22W251 NORTH AVE, GLEN ELLYN, IL, 60137,    KHURSHID & ZULFIQUAR, INC. | 7 | 700,000 | 8.86% | $ 155,063 |
| 306280 | 150 E Ogden Ave, Hinsdale, IL, 60559,    SARDINIA, INC. | 0 | 200,000 | 2.53% | $ 44,304 |
| 306395 | 7247 Kingery Hwy, Willowbrook, IL, 60559,    ROYAL CROWN, INC. | 4 | 400,000 | 5.06% | $ 88,606 |
| 306710 | 1200 75th St, Downers Grove, IL, 60559,    SARDINIA, INC. | 0 | | 0.00% | $ - |
| 307146 | 15 Danada Sq E, Wheaton, IL, 60187,    SUNROSE, INC. | 5 | 500,000 | 6.33% | $ 110,759 |
| 310222 | 263 S Randall Rd, Elgin, IL, 60559,    NAVEED & FARIDA, INC. | | 500,000 | 6.33% | $ 110,759 |
| 310404 | 9400 JOLIET RD, HODGKINS, IL, 60559,    AL-KARIM, INC. | 6 | 450,000 | 5.70% | $ 99,684 |
| 310407 | 890 E MAIN ST, EAST DUNDEE, IL, 60118,    NAVEED & SUNENA, INC. | | 700,000 | 8.86% | $ 155,063 |
| 330402 | 2543 W ALGONQUIN RD, ALGONQUIN, IL, 60559,    TEJANY & TEJANY, INC. | | 450,000 | 5.70% | $ 99,684 |
| 330933 | 1770 S Randall Rd, Geneva, IL, 60559,    NAVEED & FARIDA, INC. | | 125,000 | 1.58% | $ 27,690 |
| 331015 | 516 W Irving Park Rd, Wood Dale, IL, 60559,    INARA, INC. | 3 | 600,000 | 7.59% | $ 132,911 |
| 336427 | 407 S LINCOLNWAY, NORTH AURORA, IL, 60559,    AL-FATIMA, INC. | 6 | 450,000 | 5.70% | $ 99,684 |
| 336862 | 7450 BARRINGTON RD, HANOVER PARK, IL, 60133,    NAVEED & NALEENA, INC. | 8 | 800,000 | 10.13% | $ 177,215 |
| 340339 | 15 E OGDEN AVE, WESTMONT, IL, 60559,    FATIMA & FARIDA INC. | 8 | 400,000 | 5.06% | $ 88,606 |
| 340391 | 339 SOUTH EASTWOOD DR, WOODSTOCK, IL, 60098,    SABEEN, INC. | 9 | 700,000 | 8.86% | $ 155,063 |
| | Totals | | 7,900,000 | 100.00% | $ 1,750,000 |

| Corporate Lease | |
|---|---|

| Used 350K as remodel assumption for all stores |
|---|

# DEIDENTIFICATION GUIDELINES
## for Dunkin' Donuts, Baskin-Robbins and Togo's

**Below is an itemized checklist of all items to be removed from a terminated/closed store. After deidentification this completed form must be signed, dated and photos must be attached.**

## ALL BRANDS

_____ Exterior signage: pylon signs, entrance, exit, help wanted, building signs etc.
_____ Drive-thru menu board support material
_____ Window signage: decals, franchising information, store hours
_____ Awnings and patio umbrellas
_____ Neon signage and clock(s)
_____ Wall mounted menu boards, signs with brand logo or "Whiteside"
_____ Destroy, sell or give (to a qualified franchisee) all proprietary paper goods
_____ Destroy, sell or give (to a qualified franchisee) all proprietary food goods
_____ All equipment with a logo (until the logo can be permanently removed/replaced)
_____ All POS equipment/cash registers (until all logos, proprietary names and/or brand identifiers are removed from the hardware, software, if any, and the printed receipts)
_____ Return all manuals to franchisor
_____ Return all printed training materials, video training materials, and I-Train CD-ROM software to franchisor, and notify e-learning administrator to de-activate e-learning account (if applicable)
_____ Return for franchisor any and all software licensed from franchisor to franchisee or provide proof such software has been re-licensed to franchisee from the appropriate vendor and that all references to the brand or proprietary names have been removed
_____ All uniform shirts, hats/visors, aprons, and nametags
_____ All posters, charts, order forms etc.
_____ Merchandising materials: window signs, translites, static cling strips, register toppers, mobiles, banners, etc.
_____ Cancel all telephone listings, change phone number(s), and directory advertising; all references to the respective brand(s) must be discontinued when answering calls

## DUNKIN' DONUTS SPECIFIC

_____ Paint roof system with color that contrasts with the Dunkin' Donuts color
_____ Photogels
_____ Trademark item menu slats & slats with the distinctive frankfurter style lettering
_____ Product labels from donut cases with distinctive frankfurter style lettering and Dunkin' Donuts colors
_____ All Dunkin' Donuts wallpaper (removed and/or painted)

## DEIDENTIFICATION GUIDELINES
## for Dunkin' Donuts, Baskin-Robbins and Togo's

### BASKIN – ROBBINS SPECIFIC

| | |
|---|---|
| _____ | Wall murals |
| _____ | Racing strips |
| _____ | Interior trash container w/31 logo |
| _____ | Upright freezer: B-R assets i.d. tag |
| _____ | Dipping cabinet nameplates and taste spoon holders |
| _____ | Color strip on front of dipping cabinets |
| _____ | Backlit menu system material: translite, menu strips, flavor strips. |
| _____ | Birthday club display, and club cards |
| _____ | Topping display nametags |
| _____ | Beverage display rack |
| _____ | Hot topping warmer faceplates |
| _____ | Yogurt: Today's flavor stand, flavor strips, control panel, door decals, and stand pipe settings label |
| _____ | 31 excellence and/or Club 31 awards |
| _____ | Waring/Vitamix blenders with B-R logo (Remove logo) |
| _____ | Flavor freezer strips |
| _____ | Gift of Joy Coupons |
| _____ | Photoflip display; including photos and recipe cards |
| _____ | Cone holders with 31 logo |
| _____ | Wafflecone maker with 31 logo |
| _____ | Breezie and Breezie manual |
| _____ | Destroy, sell or give (to a qualified franchisee) all BR paper goods, that are proprietary but do not have BR logo on it. (e.g. pink spoons) |
| _____ | Order forms: Previously provided by Accommodation Stock, Ice Cream, & Paper |

### TOGO'S SPECIFIC

| | |
|---|---|
| _____ | Destroy, sell or give (to a qualified franchisee) "Main Street Menu" photo gels with Togo's sandwiches by number, any signs or posters with Togo's logo or pictures of Togo's products or merchandise |
| _____ | Destroy, sell or give (to a qualified franchisee) all "cheat sheets" and job aids, slicing charts, checklists and recipe cards |
| _____ | Destroy, sell or give (to a qualified franchisee) all regular and catering menus, phone order pads and fax order pads |

Date: _____          Franchisor Representative: _____

PC# _____          Location: _____

11-23-04, 50080

2

| PC | Location | Remod Year |
|---|---|---|
| 300211 | 3019 Wolf Rd, Westchester, IL, 60559,    SHAKER-KHANNOO, INC. | |
| 301359 | 1511 IRVING PARK RD, HANOVER PARK, IL, 60133,    NAVROZ, INC. | |
| 301854 | 1711 W Main St, Saint Charles, IL, 60174,    SANKAR RAHIM, INC. | 6 |
| 301869 | 22W251 NORTH AVE, GLEN ELLYN, IL, 60137,    KHURSHID & ZULFIQUAR, INC. | 7 |
| 306280 | 150 E Ogden Ave, Hinsdale, IL, 60559,    SARDINIA, INC. | 0 |
| 306395 | 7247 Kingery Hwy, Willowbrook, IL, 60559,    ROYAL CROWN, INC. | 4 |
| 306710 | 1200 75th St, Downers Grove, IL, 60559,    SARDINIA, INC. | 0 |
| 307146 | 15 Danada Sq E, Wheaton, IL, 60187,    SUNROSE, INC. | 5 |
| 310222 | 263 S Randall Rd, Elgin, IL, 60559,    NAVEED & FARIDA, INC. | |
| 310404 | 9400 JOLIET RD, HODGKINS, IL, 60559,    AL-KARIM, INC. | 6 |
| 310407 | 890 E MAIN ST, EAST DUNDEE, IL, 60118,    NAVEED & SUNENA, INC. | |
| 330402 | 2543 W ALGONQUIN RD, ALGONQUIN, IL, 60559,    TEJANY & TEJANY, INC. | |
| 330933 | 1770 S Randall Rd, Geneva, IL, 60559,    NAVEED & FARIDA, INC. | |
| 331015 | 516 W Irving Park Rd, Wood Dale, IL, 60559,    INARA, INC. | 3 |
| 336427 | 407 S LINCOLNWAY, NORTH AURORA, IL, 60559,    AL-FATIMA, INC. | 6 |
| 336862 | 7450 BARRINGTON RD, HANOVER PARK, IL, 60133,    NAVEED & NALEENA, INC. | 8 |
| 340339 | 15 E OGDEN AVE, WESTMONT, IL, 60559,    FATIMA & FARIDA, INC. | 8 |
| 340391 | 339 SOUTH EASTWOOD DR, WOODSTOCK, IL, 60098,    SABEEN, INC. | 9 |
| | Totals | |

Corporate Lease

# EXHIBIT C

061206                                                    PC 331015, Wood Dale, IL

## PURCHASE OPTION AGREEMENT

> AGREEMENT entered into this _5\5th_ day of May, 2007, by and between: INARA, INC.,
> the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 516 West
> Irving Park Road, Wood Dale, Illinois 60559 (hereinafter collectively or individually referred to as
> the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS
> FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices
> in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA,
> Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of
> their nominee or assignee (are for the sake of convenience hereinafter collectively or individually
> referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.      In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER,
the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto
FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the
sum of SIX HUNDRED THOUSAND and 00/100 dollars ($600,000.00) in the form of a credit
against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the
"Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein,
all of the SELLER's right, title and interest in the building, equipment, signs, franchise
agreement, lease and other property of every kind and nature (excluding inventory to be
purchased separately) used in connection with the SELLER's operation of the combination
Baskin-Robbins and Dunkin' Donuts Retail Unit located at 516 West Irving Park Road, Wood
Dale, Illinois 60559 (PC 331015) (the assets to be purchased shall be collectively referred to as
the "STORE").

FRANCHISOR, or their nominee or assignee, must exercise the purchase option described
above by written notice to the SELLER, on or before November 5, 2007, by certified mail,
return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives
said notice (or refuses the same, as the case may be) or as mutually agreed upon by the
parties.

2.      The Purchase Price shall be paid as follows:

05/13/2007  14:05    16505481337    PAIS SYNDICATE USA    PAGE  03

At closing, upon execution and delivery of a bill of sale,
by cash, bank check or certified check........+$600,000.00

=================

TOTAL................................................................................$600,000.00

3.  At closing, the following adjustments shall be made:

A.  By deducting from the Purchase Price any outstanding balance due for machinery,
    equipment and signs, and the SELLER assigning all of its right, title and interest therein
    to the BUYER who shall have the right to pay the outstanding balance according to the
    terms and conditions of any existing financing and security agreement(s):

B.  By deducting from the Purchase Price:

    (i)    and paying to FRANCHISOR all sums due and owing by the SELLER to
    FRANCHISOR as of the date of closing including (but not limited to) the transfer fee and
    any other sums due under the franchise agreement, lease and all other agreements; and

    (ii)   the SELLER's share of real estate taxes and/or personal property taxes due and
    payable in the year prorated as of the date of closing; and

    (iii)  percentage rent (if applicable) prorated as of the date of closing on a lease-year
    basis;

    (iv)   all transfer fees and sales and/or use taxes applicable to this transaction; and

    (v)    prorated utility charges for the STORE; and

    (vi)   all liabilities encumbering the transferred assets; and

2

(vii) the amount due to the SELLER's suppliers, as shown in an affidavit to be supplied to the BUYER by the SELLER prior to closing, listing all suppliers, their names and addresses, and the amounts due to each supplier; and

(viii) Twenty-five thousand dollars ($ 25,000.00) to be held in a non-interest bearing escrow by the attorneys for the BUYER for a period of sixty (60) days from the date of closing to be used to pay any additional indebtedness of the SELLER incurred in the ordinary course of business which is not listed accurately in the affidavit referred to in (vii) above; and

(ix) all amounts necessary in the BUYER's opinion to make needed repairs to the building, trade equipment, signs, heating, ventilation and air conditioning systems or other improvements to the premises and to cure deficiencies noted in FRANCHISOR's inspections prior to closing. Under no circumstances shall this language be construed to require SELLER to remodel this Store.

C.    Should any outstanding bill be presented to the BUYER within the sixty (60) day period after closing, the SELLER shall be notified of same and be provided ten (10) days within which to either contest or acquiesce to the payment of said obligation. Should the SELLER not respond within said ten (10) day period, the BUYER is authorized to promptly pay said obligation from the escrowed funds. At the end of the sixty (60) day period, any and all remaining balances in escrow shall be forthwith forwarded by wire transfer to the Zarco, Einhorn, Salkowski & Brito, P.A. client trust account, and SELLER hereby acknowledges and agrees that any payments so made by FRANCHISOR shall be deemed to be made to, and received by, SELLER and the escrow shall terminate. Any debt of the SELLER, whether disclosed or undisclosed to the BUYER, not paid by the SELLER prior to closing may be set off against any debt of the BUYER to the SELLER, without demand upon or notice to the SELLER or any other party.

4.    On or before closing, the SELLER shall enter into: (I) FRANCHISOR's customary agreements to provide for the assignment to the BUYER (or termination, at the sole option of FRANCHISOR) of the SELLER's franchise agreements with FRANCHISOR; and (ii) general releases of all claims of the SELLER against FRANCHISOR including its successors and assigns, subsidiaries and all Affiliates and Parents of each company, and officers, directors, agents, employees and representatives, past and present, as required by the SELLER's franchise agreements.

3

5.      Between the date hereof and the closing, the SELLER agrees to continue all routine purchases which it would undertake consistent with its prior operations in the same manner as previously conducted.  It is understood that all equipment shall be sold in good working condition, reasonable wear and tear excepted.  Unless specifically stated otherwise herein, the SELLER warrants all equipment, including heating, ventilation and air conditioning systems, to be in good working order and the SELLER agrees to deliver all equipment to the BUYER in good working order, at the closing.

6.      The SELLER will comply with all the provisions of law pertaining to bulk transfer prior to the closing.  In addition, the SELLER agrees to hold the BUYER harmless and indemnified from any and all loss, costs of damage, including attorney's fees, which the BUYER may incur on account of the SELLER's breach or failure to comply with said law.

7.      The SELLER shall deliver evidence of payment of all local, state and federal tax obligations or shall escrow an amount sufficient to pay any new tax liability to the extent required by law. The SELLER shall deliver evidence satisfactory to the BUYER that the SELLER has obtained all governmental licenses and permits required to lawfully operate the STORE and that the SELLER is in full compliance with all such licenses and permits.

8.      The SELLER agrees that the SELLER shall be responsible and liable for all claims and liabilities arising in connection with the SELLER's operation of the STORE, existing or arising out of transactions entered into or facts arising prior to the closing and agrees to hold the BUYER harmless from same. The SELLER further agrees to execute and deliver to the BUYER its written agreement in form acceptable to the BUYER indemnifying the BUYER against all liabilities, claims, obligations and causes of action which may be asserted against the BUYER arising out of the SELLER's operation of the STORE, it being understood and agreed that the BUYER does not assume any such liabilities, claims or obligations.

9.      Except as otherwise specifically provided herein, the BUYER shall be responsible and liable for all claims and liabilities arising in connection with the operation of the STORE existing or arising out of the transactions entered into or facts arising after the closing and shall hold the SELLER harmless from same.

4

10.   The SELLER assumes all risk of destruction, loss, or damage due to fire and other casualty up to the date of transfer of possession. If the destruction, loss or damage is such that the business of the SELLER is interrupted or curtailed, the BUYER shall have the right to terminate this agreement.  If the destruction, loss or damage is such that the business of the SELLER is neither interrupted nor curtailed, the Purchase Price shall be adjusted at the closing to reflect such destruction, loss, or damage and if the BUYER and SELLER are unable to agree upon the amount of such adjustment, any dispute shall be determined by mediation under the rules then obtaining of the American Arbitration Association.

11.   This agreement shall be construed under the laws of the state in which the STORE is located. Any disputes under this agreement may be settled by mediation within said state under the rules then obtaining of the American Arbitration Association.

12.   The SELLER represents that it is not subject to any court order or other legal proceedings which might adversely affect the business or assets of the SELLER or which would preclude or hamper the transactions contemplated by this agreement.

13.   The SELLER represents that the SELLER is current, and through the date of closing shall remain current, on all obligations to FRANCHISOR and its subsidiaries including, but not limited to, franchise fees, rentals and percentage rentals, and advertising fees.

14.   An inventory of the acceptable food stuffs and paper products at the STORE shall be taken on the day of closing. The BUYER shall purchase all usable and acceptable merchandise valued in accordance with the wholesale price lists in effect at the date of closing.  Payment of such inventory shall be made in cash within ten (10) days thereafter.

15.   The SELLER acknowledges that FRANCHISOR may assign its rights under this agreement to a third party who may exercise the rights of the BUYER hereunder and SELLER agrees to honor said assignment and accept the nominee or assignee as debtor under any deferred financing terms recited herein, without recourse to FRANCHISOR.

16.   Upon the giving of such notice of election to purchase, the SELLER shall promptly execute, acknowledge, and deliver to the BUYER a good and sufficient bill of sale warranting that there are no encumbrances, together with any other documents and corporate votes

5

necessary to complete the sale of the STORE. FRANCHISOR shall not assume any debts, liabilities or obligations of the SELLER. The BUYER shall assume such obligations as are expressly described in this agreement.

17.   Upon receipt of the notice of exercise of the option to purchase, the SELLER shall promptly execute, acknowledge and deliver to the BUYER the Letter of Representation attached hereto as Exhibit A.

18.   If FRANCHISOR or their nominee or assignee does not exercise the option to purchase on or before the deadline, the sum of one dollar ($1.00) paid shall be forfeited to the SELLER and this agreement shall be null and void.

19.   SELLER acknowledges that exercise of the option to purchase by FRANCHISOR must be approved by the FRANCHISOR Finance Committee.

20.   Notices required to be sent hereunder shall be mailed to the following addresses or to such other addresses as may have been requested in writing by either party:

Seller:             _191  ASHFIED  CT_
                    _BLOOMINGDALE,  ILL  60108_
                    _____


FRANCHISOR,     c/o Kevin Duperre, Director, Business Development - Franchising

        with a copy to: Legal Department
                        130 Royall Street
                        Canton, MA 02021


        IN WITNESS WHEREOF, the parties have hereunto set their hands and seals on the date first written above.

                                                            SELLER

6

ATTEST:

INARA, INC.

By: _____

Name: Nooruddin Sadruddin, President

_____
Secretary

(FRANCHISOR)

BASKIN-ROBBINS FRANCHISED SHOPS LLC
successor in interest to (Baskin-Robbins USA LLC), Baskin-Robbins USA, Co.
DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC
successor in interest to (Dunkin' Donuts LLC), Dunkin' Donuts Incorporated

By: _____

_____
Secretary

William Bode
Sr. Director, Business Development-
Franchising

7

EXHIBIT A.

PC 331015

Date:_____

_____ (the BUYER)

_____

_____

To the above BUYER:

This letter is sent pursuant to a Purchase Option Agreement dated _____,
2007, between the undersigned "SELLER" and BASKIN-ROBBINS FRANCHISED SHOPS
LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability
companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-
Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts
Incorporated (hereinafter for the sake of convenience collectively referred to as
"FRANCHISOR") for the purchase of the DUNKIN' DONUTS/BASKIN-ROBBINS RETAIL UNIT
located at 516 West Irving Park Road, Wood Dale, Illinois 60559. Defined terms in this letter
conform to said agreement.

1.    The SELLER makes the following representations with respect to the operation of the
STORE, for the purpose of inducing the BUYER to purchase said business, and the BUYER, in
fact, shall rely on said representations, as follows:

a.    The SELLER is selling assets, not stock in any corporation;

b.    The SELLER is not bound by any long-term contract or agreement with any person,
      partnership or corporation, either under the form of a contract of employment, a contract
      of exclusivity or any agreement relative to the conduct of its business and its premises
      except for the franchise agreements with franchisor;

8

c.    The SELLER is not a party to any contract or agreement with a labor union or any local or subdivision thereof, nor with any person with an individual employment term of more than 30 days. The SELLER has not been charged with any unresolved unfair labor practices, nor does the SELLER have knowledge of any present union organizing activity among persons presently employed at the STORE. The SELLER has not been charged with any violation of federal or state labor laws which are now unresolved with respect to employees working at the STORE;

d.    The SELLER has not guaranteed in any manner any debt of any person, firm, partnership or corporation;

e.    The SELLER is not and will not be in bankruptcy, or under the effect of a proposal or other statute dealing with arrangements between creditors and debtors;

f.    There exists no pension fund nor deferred benefits plan with respect to the STORE;

g.    The SELLER, if a corporation, has no subsidiaries;

h.    The property of the SELLER is not encumbered by any trust deed, commercial pledge, or conditional sale;

i.    The SELLER will carry on until the closing date, in the normal course of business, managing it's business reasonably, and making no decisions other than normal business decisions, without the prior written consent of the BUYER;

j.    At closing, the SELLER will have no loans outstanding to directors or shareholders, whether or not evidenced by notes;

k.    There shall be no actual or threatened action or proceeding by or before any court or other body or person which shall seek to restrain, prohibit or invalidate the transfer of the STORE to the BUYER;

9

l.    Prior to the closing date, the SELLER shall give written notice to each of its employees at the STORE, in a format approved by the BUYER, of at least as follows: that the STORE is being sold to the BUYER, that all rights, seniorities, accruals, vacation entitlement, sick leave entitlement, health insurance benefits and other employee benefits arising out of employment by the SELLER will end as of the closing date, and that if such person is hired by the BUYER, it will be as a new employee of the BUYER, without reference to the employment with the SELLER and without liability for payment of any previously accrued benefits. The SELLER shall terminate employment of all of SELLER's employees at the STORE (who SELLER will not move to another shop), effective on the closing date. The SELLER shall retain responsibility for wages, accrued vacation pay, health insurance benefits, workers compensation benefits and all other payments or accruals due or owing to its employees and to federal, state or local governmental entities on their behalf, to the closing date, and SELLER shall, on or before closing, provide the BUYER with an accounting of any such wages, payments or other accruals. The BUYER may, at its option, but is under no duty or obligation to, hire any of SELLER's employees subsequent to the closing date. The BUYER shall have sole responsibility and liability for any wages and fringe benefits of the persons it employs subsequent to the closing date;

The BUYER assumes no responsibility for payment of any wages or compensation relating to any employee pension, profit sharing or similar retirement plan granted by the SELLER pursuant to the Internal Revenue Code of 1954, or subject to the Employee Retirement Income Security Act of 1974;

m.    The SELLER represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by the Purchase Option Agreement and, insofar as it knows, no broker or other person is entitled to any commission or finder's fee in connection with any of these transactions;

n.    The BUYER shall give notice in compliance with the Uniform Commercial Code, of the bulk transfer contemplated by this Agreement. SELLER shall furnish the BUYER with the information necessary to prepare this notice, including all names and business addresses used by it within the last 2 years, at least 20 business days before the closing date.

2.    Prior to closing, the following will be required of SELLER:

10

a.    A "Bulk Sales Affidavit";

b.    Payment to all creditors through the date of closing.

If the SELLER is a corporation:

c.    A corporate vote authorizing the sale to the BUYER, by all officers, directors and shareholders; and

d.    A corporate tax clearing certificate from the division of taxation of the state in which the STORE is located and (if different) the state in which the corporation is organized; and

Yours truly,

_____ (the SELLER)

By:_____

, President

ATTEST:

_____

Secretary

cc:    BASKIN-ROBBINS FRANCHISED SHOPS LLC and
       DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC
       130 Royall Street, Canton, MA  02021
       Attn:  Legal Department

11

05/13/2007  02:31   16305401337      RAIS SYNDICATE USA               PAGE  02

061206                                      PC 336427, North Aurora, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: AL-FATIMA, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 407 South Lincoln Highway, North Aurora, Illinois 60559 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.    In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of FOUR HUNDRED FIFTY THOUSAND and 00/100 dollars ($450,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit located at 407 South Lincoln Highway, North Aurora, Illinois 60559 (PC 336427)(the assets to be purchased shall be collectively referred to as the " STORE" ).

FRANCHISOR, or their nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.    The Purchase Price shall be paid as follows:

061206    PC 340339, Westmont, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: FATIMA & FARIDA, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 15 East Ogden Avenue, Westmont, Illinois 60559 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.    In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of FOUR HUNDRED THOUSAND dollars ($400,000.00) (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit located at 15 East Ogden Avenue, Westmont, Illinois 60559 (the assets to be purchased shall be collectively referred to as the " STORE" ).

FRANCHISOR, or their nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.    The Purchase Price shall be paid as follows:

061206                                              PC 330402, Algonquin, IL.

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: TEJANY & TEJANY, INC., the corporation operating the Dunkin' Donuts retail unit located at 2543 West Algonquin Road, Algonquin, Illinois 60559 (hereinafter referred to as the "SELLER"); and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, a Delaware limited liability company, with its principal office in Canton, Massachusetts, successor in interest (Dunkin' Donuts LLC) and Dunkin' Donuts Incorporated, on its own behalf or on behalf of its nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.      In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of FOUR HUNDRED FIFTY THOUSAND and 00/100 dollars ($450,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Dunkin' Donuts Retail Unit located at 2543 West Algonquin Road, Algonquin, Illinois 60559 (PC 330402) (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.      The Purchase Price shall be paid as follows:

1

05/13/2007  22:08   16305401337      PAIS SYNDICATE USA                    PAGE  02

061206                                      PC 340391, Woodstock, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: SABEEN, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 339 South Eastwood Drive, Woodstock, Illinois 60098 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.    In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of SEVEN HUNDRED THOUSAND and 00/100 dollars ($700,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit located at 339 South Eastwood Drive, Woodstock, Illinois 60098 (PC 340391) (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or their nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.    The Purchase Price shall be paid as follows:

PC 310407, East Dundee, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: NAVEED &
SUENA, INC., the corporation operating the Dunkin' Donuts retail unit located at 890 East Main
Street, East Dundee, Illinois 60118 (hereinafter referred to as the "SELLER"); and DUNKIN'
DONUTS FRANCHISED RESTAURANTS LLC, a Delaware limited liability company, with its
principal office in Canton, Massachusetts, successor in interest (Dunkin' Donuts LLC) and
Dunkin' Donuts Incorporated, on its own behalf or on behalf of its nominee or assignee (are for
the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or
"FRANCHISOR" as the case may be ).

### WITNESSETH:

1.     In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER,
the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto
FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the
sum of SEVEN HUNDRED THOUSAND and 00/100 dollars ($700,000.00) in the form of a
credit against fees and costs due to FRANCHISOR by the SELLER (hereinafter called the
"Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein,
all of the SELLER's right, title and interest in the building, equipment, signs, franchise
agreement, lease and other property of every kind and nature (excluding inventory to be
purchased separately) used in connection with the SELLER's operation of the Dunkin' Donuts
Retail Unit located at 890 East Main Street, East Dundee, Illinois 60118 (PC 310407) (the
assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above
by written notice to the SELLER, on or before November 5, 2007, by certified mail, return
receipt requested.  The date of closing shall be thirty (30) days after the SELLER receives said
notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.     The Purchase Price shall be paid as follows:

At closing, upon execution and delivery of a bill of sale,
by cash, bank check or certified check........+$700,000.00

1

05/13/2007  01:38    16385481337    PAIS SYNDICATE USA    PAGE  52

061206                                                    PC 336862, Hanover Park, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: **NAVEED &
NALEENA, INC.**, the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit
located at 7450 Barrington Road, Hanover Park, Illinois 60133 (hereinafter collectively or
individually referred to as the "SELLER"); and **BASKIN-ROBBINS FRANCHISED SHOPS LLC**
and **DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC**, Delaware limited liability
companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-
Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts
Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of
convenience hereinafter collectively or individually referred to as the "BUYER" or
"FRANCHISOR" as the case may be ).

### WITNESSETH:

1.     In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER,
the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto
FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the
sum of **EIGHT HUNDRED THOUSAND and 00/100 dollars ($800,000.00)** in the form of a
credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter
called the "Purchase Price"), free and clear of all liens and other encumbrances except as set
forth herein, all of the SELLER's right, title and interest in the building, equipment, signs,
franchise agreement, lease and other property of every kind and nature (excluding inventory to
be purchased separately) used in connection with the SELLER's operation of the combination
Baskin-Robbins and Dunkin' Donuts Retail Unit located at **7450 Barrington Road, Hanover
Park, Illinois 60133 (PC 336862)** (the assets to be purchased shall be collectively referred to as
the "STORE").

FRANCHISOR, or their nominee or assignee, must exercise the purchase option described
above by written notice to the SELLER, **on or before November 5, 2007,** by certified mail,
return receipt requested.  The date of closing shall be thirty (30) days after the SELLER receives
said notice (or refuses the same, as the case may be) or as mutually agreed upon by the
parties.

2.     The Purchase Price shall be paid as follows:

05/13/2007   61:24   1630548133/   RAIS SYNDICATE USA   PAGE  03

061206

PC 301359, Hanover Park, IL

### PURCHASE OPTION AGREEMENT

AGREEMENT entered into this $\underline{31^{st}}$ day of May, 2007, by and between: NAVROZ, INC., the corporation operating the Dunkin' Donuts retail unit located at 1511 Irving Park Road, Hanover, Illinois 60103 (hereinafter referred to as the "SELLER"); and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, a Delaware limited liability company, with its principal office in Canton, Massachusetts, successor in interest (Dunkin' Donuts LLC) and Dunkin' Donuts Incorporated, on its own behalf or on behalf of its nominee or assignee (are for the sake of convenience hereinafter referred to as the "BUYER" or "FRANCHISOR" as the case may be).

### WITNESSETH:

1.      In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of EIGHTY THOUSAND and 00/100 dollars ($80,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the Dunkin' Donuts Unit located at 1511 Irving Park Road, Hanover, Illinois 60103 (PC 301359) (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.      The Purchase Price shall be paid as follows:

        At closing, upon execution and delivery of a bill of sale,
        by cash, bank check or certified check........+$80,000.00

1

05/13/2007  01:12  15365461557    RAIS SYNDICATE USA

061206

PC 301854, St. Charles, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this _31st_ day of May, 2007, by and between: SANKAR RAHIM, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 1711 West Main Street, St. Charles, Illinois 60174 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.    In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of EIGHT HUNDRED TWENTY FIVE THOUSAND and 00/100 dollars ($825,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit located at 1711 West Main Street, St. Charles, Illinois 60174 (PC 301854) (the assets to be purchased shall be collectively referred to as the " STORE" ).

FRANCHISOR, or their nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties

PC 307146, Wheaton, IL

## PURCHASE OPTION AGREEMENT

> AGREEMENT entered into this 31st day of May, 2007, by and between: SUNROSE,
> INC., the corporation operating the Dunkin' Donuts retail unit located at 15 Danada Square
> East, Wheaton, Illinios 60187 (hereinafter referred to as the "SELLER"); and DUNKIN'
> DONUTS FRANCHISED RESTAURANTS LLC, a Delaware limited liability company, with its
> principal office in Canton, Massachusetts, successor in interest (Dunkin' Donuts LLC) and
> Dunkin' Donuts Incorporated, on its own behalf or on behalf of its nominee or assignee (are for
> the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or
> "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.    In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER,
the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto
FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the
sum of FIVE HUNDRED THOUSAND and 00/100 dollars ($500,000.00) in the form of a credit
against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the
"Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein,
all of the SELLER's right, title and interest in the building, equipment, signs, franchise
agreement, lease and other property of every kind and nature (excluding inventory to be
purchased separately) used in connection with the SELLER's operation of the combination
Dunkin' Donuts, Baskin-Robbins and Togo's Retail Unit located at 15 Danada Square East,
Wheaton, Illinois 60187 (PC 307146) (the assets to be purchased shall be collectively referred
to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above
by written notice to the SELLER, on or before November 5, 2007, by certified mail, return
receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said
notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.    The Purchase Price shall be paid as follows:

1

. 05/13/2007  00:46   16305401337         PAIS SYNDICATE USA                      PAGE  02

061206                                          PC 301869, Glen Ellyn, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 21st day of May, 2007, by and between: KHURSHID & ZULFIQUAR, INC., the corporation operating the Dunkin' Donuts retail unit located at 22 West 251 North Avenue, Glen Ellyn, Illinois 60137 (hereinafter referred to as the "SELLER"); and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, a Delaware limited liability company, with its principal office in Canton, Massachusetts, successor in interest (Dunkin' Donuts LLC) and Dunkin' Donuts Incorporated, on its own behalf or on behalf of its nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.    In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of SEVEN HUNDRED THOUSAND and 00/100 dollars ($700,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Dunkin' Donuts Unit located at 22 West 251 North Avenue, Glen Ellyn, Illinois 60137 (PC 301869) (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.    The Purchase Price shall be paid as follows:

At closing, upon execution and delivery of a bill of sale,
by cash, bank check or certified check........+$700,000.00

05/19/2007  15:50   16305481337                    PAIS SYNDICATE USA                        PAGE  02

061206                                                      PC 300211, Westchester, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: SHAKER-KHANOO, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 3019 Wolf Road, Westchester, Illinois 60153 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.     In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of TWENTY THOUSAND and 00/100 dollars ($20,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit located at 3019 Wolf Road, Westchester, Illinois 60153 (PC 300211) (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.     The Purchase Price shall be paid as follows:

05/13/2007  16:01    16305401337          FAIS SYNDICATE USA                    PAGE  82

061206                                                    PC 330933, Geneva, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this __31st__ day of May, 2007, by and between: NAVEED & FARIDA, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 1770 South Randall Road, Geneva, Illinois 60559 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.     In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of ONE HUNDRED TWENTY FIVE THOUSAND and 00/100 dollars ($125,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit located at 1770 South Randall Road, Geneva, Illinois 60559 (PC 330933) (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, **on or before November 5, 2007,** by certified mail, return receipt requested.  The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.     The Purchase Price shall be paid as follows:

1

05/13/2007  15:39    16305401337         PAIS SYNDICATE USA              PAGE  02

061206                                          PC 306395, Willowbrook, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this __31st__ day of May, 2007, by and between: ROYAL CROWN, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 7247 Kingery Highway, Willowbrook, Illinois 60559 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.     In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of FOUR HUNDRED THOUSAND and 00/100 dollars ($400,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit located at **7247 Kingery Highway, Willowbrook, Illinois 60559 (PC 306395)** (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or their nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, **on or before November 5, 2007,** by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.     The Purchase Price shall be paid as follows:

1

05/13/2007  15:07    16305401337    RAIS SYNDICATE USA    PAGE  02

061206                                              PC 306280, Hinsdale, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: SARDINIA, INC., the corporation operating the Dunkin' Donuts retail unit located at 150 East Ogden Avenue, Hinsdale, Illinois 60521 (hereinafter referred to as the "SELLER"); and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, a Delaware limited liability company, with its principal office in Canton, Massachusetts, successor in interest (Dunkin' Donuts LLC) and Dunkin' Donuts Incorporated, on its own behalf or on behalf of its nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.    In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of TWO HUNDRED THOUSAND and 00/100 dollars ($200,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Dunkin' Donuts, Baskin-Robbins and Togo's Retail Unit located at 150 East Ogden Avenue, Hinsdale, Illinois 60521 (PC 306280) (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or mutually agreed upon by the parties.

2.    The Purchase Price shall be paid as follows:

1

061206

PC 310404, Hodgkins, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this 31st day of May, 2007, by and between: AL-KARIM, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 9400 Joliet Road, Hodgkins, Illinois 60559 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

### WITNESSETH:

1.    In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of FOUR HUNDRED FIFTY THOUSAND and 00/100 dollars ($450,000.00) in the form of a credit against attorneys' fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit  located at 9400 Joliet Road, Hodgkins, Illinois 60559 (PC 310404) (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or their nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, on or before November 5, 2007, by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.    The Purchase Price shall be paid as follows:

05/13/2007  14:19   16305401337   PAIS SYNDICATE USA   PAGE  02

061206                                            PC 310222, Elgin, IL

## PURCHASE OPTION AGREEMENT

AGREEMENT entered into this $3\underline{1}^{st}$ day of May, 2007, by and between: NAVEED & FARIDA, INC., the corporation operating the Baskin-Robbins and Dunkin' Donuts retail unit located at 263 South Randall Road, Elgin, Illinois 60559 (hereinafter collectively or individually referred to as the "SELLER"); and BASKIN-ROBBINS FRANCHISED SHOPS LLC and DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, Delaware limited liability companies, with principal offices in Canton, Massachusetts, successor in interest to (Baskin-Robbins LLC), Baskin-Robbins USA, Co., (Dunkin' Donuts LLC), and Dunkin' Donuts Incorporated on their own behalf or on behalf of their nominee or assignee (are for the sake of convenience hereinafter collectively or individually referred to as the "BUYER" or "FRANCHISOR" as the case may be ).

## WITNESSETH:

1.      In consideration of the sum of one dollar ($1.00) paid by FRANCHISOR to the SELLER, the receipt whereof is hereby acknowledged, the SELLER hereby gives and grants unto FRANCHISOR, their nominee or assignee, the exclusive right and option to purchase for the sum of **FIVE HUNDRED THOUSAND and 00/100 dollars ($500,000.00)** in the form of a credit against attorney's fees and costs due to FRANCHISOR by the SELLER (hereinafter called the "Purchase Price"), free and clear of all liens and other encumbrances except as set forth herein, all of the SELLER's right, title and interest in the building, equipment, signs, franchise agreement, lease and other property of every kind and nature (excluding inventory to be purchased separately) used in connection with the SELLER's operation of the combination Baskin-Robbins and Dunkin' Donuts Retail Unit located at **263 South Randall Road, Elgin, Illinois 60559 (PC 310222)** (the assets to be purchased shall be collectively referred to as the "STORE").

FRANCHISOR, or its nominee or assignee, must exercise the purchase option described above by written notice to the SELLER, **on or before November 5, 2007,** by certified mail, return receipt requested. The date of closing shall be thirty (30) days after the SELLER receives said notice (or refuses the same, as the case may be) or as mutually agreed upon by the parties.

2.      The Purchase Price shall be paid as follows:

1

# EXHIBIT D



2600 VIRGINIA AVENUE, N.W.
SUITE 1111 – THE
WATERGATE
WASHINGTON, DC 20037-1931
MAIN: 202.295.2200

DAVID E. WORTHEN
DIRECT DIAL: 202.295.2203
DIRECT FAX: 202.295.2253
DAVID.WORTHEN@GPMLAW.COM

November 7, 2007

**VIA FACSIMILE AND CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Nooruddin Sadruddin
Tejany & Tejany, Inc.
d/b/a Dunkin' Donuts
2543 Algonquin Road
Algonquin, Illinois 60102

Nooruddin Sadruddin
Naveed & Farida, Inc.
d/b/a Dunkin' Donuts and
Baskin-Robbins
263 South Randall Road
Elgin, Illinois 60123

Nooruddin Sadruddin
Navroz, Inc.
d/b/a Dunkin' Donuts
1511 Irving Park Road
Hanover Park, Illinois 60133

Nooruddin Sadruddin
Al-Karim, Inc.
d/b/a Dunkin' Donuts and
Baskin-Robbins
9400 Joliet Road
Hodgkins, Illinois 60525

Nooruddin Sadruddin
Shaker-Khanoo, Inc.
d/b/a Dunkin' Donuts and
Baskin-Robbins
3019 Wolf Road
Westchester, Illinois 60154

Nooruddin Sadruddin
Royal Crown, Inc.

Nooruddin Sadruddin and
Jaffar A. Khowaja
Naveed & Sunena, Inc.
d/b/a Dunkin' Donuts
890 East Main Street
East Dundee, Illinois 60118

Nooruddin Sadruddin
Naveed & Farida, Inc.
d/b/a Dunkin' Donuts and
Baskin-Robbins
1770 South Randall Road
Geneva, Illinois 60134

Nooruddin Sadruddin and
Noorali Ali
Naveed & Nalleena, Inc.
d/b/a Dunkin' Donuts and
Baskin-Robbins
7448 Barrington Road
Hanover Park, Illinois 60133

Nooruddin Sadruddin
Al-Fatima, Incorporated
d/b/a Dunkin' Donuts,
Baskin-Robbins, and Togo's
407 South Lincolnway
North Aurora, Illinois 60542

Nooruddin Sadruddin
Fatima & Farida, Inc.
d/b/a Dunkin' Donuts and
Baskin-Robbins
15 East Ogden Avenue
Westmont, Illinois 60559

Nooruddin Sadruddin
Inara, Inc.

Nooruddin Sadruddin
Sardinia, Inc.
d/b/a Dunkin' Donuts
1200 75th Street
Downers Grove, Illinois 60516

Nooruddin Sadruddin and
Pyarali Khoja
Khurshid & Zulfiquar, Inc.
d/b/a Dunkin' Donuts
22 West 251 North Avenue
Glen Ellyn, Illinois 60137

Nooruddin Sadruddin
Sardinia, Inc.
d/b/a Dunkin' Donuts
150 East Ogden Avenue
Hinsdale, Illinois 60521

Nooruddin Sadruddin and
Manu S. Patel
Sankar Rahim, Inc.
d/b/a Dunkin' Donuts and
Baskin-Robbins
1711 West Main Street
St. Charles, Illinois 60174

Nooruddin Sadruddin
Manu S. Patel
Sunrose, Inc.
d/b/a Dunkin' Donuts
15 Danada Square East
Wheaton, Illinois 60187

Nooruddin Sadruddin
Sabeen, Inc.

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
A FULL-SERVICE LAW FIRM
MINNEAPOLIS, MN  •  ST. CLOUD, MN  •
WASHINGTON, DC
WWW.GPMLAW.COM

Nooruddin Sadruddin, et al.
c/o Seamus Ryan
November 7, 2007
Page 2

d/b/a Dunkin' Donuts and Togo's
7247 Kingery Highway
Willowbrook, Illinois, 60527

d/b/a Dunkin' Donuts and
Baskin-Robbins
516 West Irving Park Road
Wood Dale, Illinois 60191

d/b/a Dunkin' Donuts and
Baskin-Robbins
335 South Eastwood Drive
Woodstock, Illinois 60098

c/o Seamus M. Ryan
Marcus, Boxerman & Chatman, LLP
19 S. LaSalle Street
Suite 1500
Chicago, IL 60603

Re:    **Notice of Breach of Settlement Agreement**
Algonquin, IL (PC 330402)

Dear Franchisees:

This office represents Dunkin' Donuts Franchised Restaurants LLC and Baskin-Robbins Franchised Shops LLC (collectively, "Franchisor"). We are sending this Notice through your attorney because you informed us that you are presently represented by counsel with respect to the May 9, 2007 Settlement Agreement between you and Franchisor ("Settlement Agreement"). If it is your position that sending you this Notice care of your attorney is inadequate or improper in any way, we request that you or your attorney notify us immediately in writing.

Franchisor hereby notifies you that you are in breach of the Settlement Agreement by failing to fulfill your obligations under the Agreement and the purchase option agreements to close on the transfer of your shops to third party purchasers. You have engaged in a pattern of obstruction and delay, and have generally failed to cooperate in the sale of the shops. You have, among other things, failed to close on several transfers on the established dates for closing, encumbered the shops with millions of dollars in liens, failed to provide leases for several shops, failed to secure bulk sales stop orders, and failed to timely provide tax returns and landlord contact information in order to facilitate closing.

Pursuant to Paragraph 12 of the Settlement Agreement, you specifically agreed that in the event that you breached your obligations under the purchase option agreements that Franchisor is entitled to specific performance of your obligation to transfer the shops to Franchisor. Accordingly, pursuant to the terms of the Settlement Agreement, Franchisor hereby demands that you take all actions necessary to immediately comply with your obligations under the Settlement Agreement and purchase option agreements, including but not limited to, transferring the shops to Franchisor or its designee(s), ceasing to use any or all of the proprietary marks of Franchisor, returning all manuals to Franchisor, and complying with the post-termination obligations set forth in Paragraph 8 of the Franchise Agreements and your Leases.

Nooruddin Sadruddin, et al.
c/o Seamus Ryan
November 7, 2007
Page 3

Sincerely,

David E. Worthen